**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jose E.A.C.,

Petitioner,

v.

Todd Blanche, *Acting Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

Civ. No. 26-3506 (JWB/EMB)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Amanda M. Prose, Esq., and Austen P. Zuege, Esq., Westman, Champlin & Koehler, P.A., counsel for Petitioner.

David W. Fuller, Esq., and Carl Berry, Esq., United States Attorney's Office, counsel for Respondents.

---

This case presents two related questions: whether federal immigration officers acted within their statutory authority when they arrested Petitioner Jose E.A.C. with a warrant, and, if not, whether 8 U.S.C. § 1225(b)(2) nevertheless supplies a lawful basis for his continued detention. The first question turns on whether the arresting officers complied with requirements for a warrant-based arrest of a noncitizen who lacks lawful status. The second requires consideration of the distinct functions Congress assigned to the statutes and the proper scope of habeas relief under § 2241.

Petitioner is a noncitizen who entered the United States in 2015. Over a decade later, he was arrested and detained by Immigration and Customs Enforcement ("ICE") agents. At issue is whether his arrest was lawful.

The record establishes that Petitioner was arrested without a valid warrant. Whether that violation requires release despite Respondents' reliance on § 1225(b)(2) is a separate question. For the reasons explained below, Respondents may not continue the present custody initiated through an unauthorized arrest procedure.

## BACKGROUND

Petitioner is a citizen of El Salvador. (Doc. No. 1, Petition ¶ 11; Doc. No. 7-6 at 1.) He entered the United States in September 2015 near San Ysidro, California, and presented himself to Customs and Border Patrol Officials to seek asylum. (Petition ¶¶ 11–12; Doc. No. 7-6 at 1; Doc. No. 11-2 at 2.) After he demonstrated a credible fear of torture or persecution, Petitioner was issued a Notice to Appear ("NTA") charging him as lacking a valid entry document, and he was released into the country. (Petition ¶ 12; Doc. No. 7-1; Doc. No. 11-2 at 3.) He lives in St. Paul, Minnesota, with his wife and five children, four of whom are U.S. citizens. (Petition ¶¶ 13–14; Doc. No. 7-6 at 3.) He has worked in construction and preaches as a pastor. (Petition ¶ 14.)

In March 2024, Petitioner was criminally charged by Wisconsin authorities, based on a 2023 dispute over an unfinished construction project. (Petition ¶¶ 17–18; Doc. No. 1-1 at 1, 6.) The complaint was later refiled with lower-level charges. (Petition ¶ 18; Doc. No. 1-1 at 3; Doc. No. 1-2 at 1, 2; Doc. No. 7-6 at 2.) Petitioner was released on conditions pending trial. (Petition ¶ 19; Doc. No. 1-2 at 6–7; Doc. No. 1-3.)

On January 7, 2025, an Immigration Judge denied Petitioner's asylum claim and ordered him removed to El Salvador. (Doc. No. 7-2.) Petitioner filed a timely appeal, which remains pending. (Doc. No. 7-3.)

The trial on Petitioner's criminal charges was scheduled for May 26, 2026, at the St. Croix County Courthouse in Hudson, Wisconsin. (Petition ¶ 20; Doc. No. 1-2 at 3–4.) Earlier in the month, ICE agents reviewed the court docket and matched Petitioner's name and date of birth with those in his immigration records. (Doc. No. 11 ¶ 3.) On May 22, a Supervisory Detention Deportation Officer ("SDDO") reviewed Petitioner's prior immigration encounter records and his removal order, which both contain Petitioner's complete name and country of citizenship. (*Id.* ¶¶ 4–5.) Based on that information, the SDDO issued a Form I-200 arrest warrant which states that probable cause existed based on "biometric confirmation of the subject's identity and a records check of federal databases" that indicate lack of status or removability. (*Id.* ¶ 6; Doc. No. 7-4.)

As Petitioner arrived to the courthouse in the morning on May 26, a different ICE agent "visually identified Petitioner" and arrested him pursuant to the I-200 warrant. (Petition ¶¶ 16, 20; Doc. No. 7-6 at 2; Doc. No. 11 ¶ 7.) Petitioner was then taken to the Whipple Federal Building in St. Paul for processing, and transferred to the Kandiyohi County Jail in Willmar, Minnesota. (Petition ¶¶ 30, 32; Doc. No. 7-6 at 2.)

The Wisconsin court noted Petitioner's non-appearance and issued a bench warrant for his arrest. (Petition ¶ 22; Doc. No. 1-2 at 3.)

Two days later, Petitioner filed a Petition for Writ of Habeas Corpus in federal court, challenging his detention without a bond hearing on due process grounds. (Petition

¶ 33.) On June 5, 2026, Respondents were ordered to provide Petitioner with an individualized bond hearing. (*Id.* ¶ 37.) The bond proceeding took place on June 8, 2026, and the Immigration Judge denied bond, finding that Petitioner is a "danger to steal or swindle potential citizens of their money," that he is a flight risk "considering the speculative nature of prevailing on appeal in his immigration case," and that he faces potential jail time for his pending charges in Wisconsin. (*Id.* ¶ 38; Doc. No. 1-4 at 4.)

Petitioner remains in custody at the Kandiyohi County Jail. (Petition ¶¶ 6, 32.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims his arrest violates the governing immigration law, the Fourth Amendment, the Administrative Procedure Act, and *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), because he was not arrested in accordance with the governing law. (Petition ¶¶ 76–106.) He also claims that his bond hearing did not provide constitutionally adequate process. (*Id.* ¶¶ 107–19.)

Petitioner challenges only the lawfulness of his present detention. He does not contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for

custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

Petitioner's arrest-based claims do not seek judicial review of the Immigration Judge's bond determination, as Respondents contend. (*See* Doc. No. 6 at 2–4.) Rather, Petitioner seeks to review only the validity of the arrest that initiated his present custody. The Immigration Judge's subsequent determination of whether *continued* custody is warranted based on flight risk and danger to the community has no bearing on whether Petitioner was *first* arrested in accordance with the governing immigration provisions. That question was not presented or considered at Petitioner's bond proceeding.

## II. Analysis

### A. Statutory Arrest Authority

Petitioner claims Respondents failed to effectuate a lawful arrest under applicable immigration law. Every federal administrative agency, including ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022). That means any failure to abide by the governing statutes and regulations represents taking action without lawful authority to do so. Accordingly, Petitioner's claim asks whether Respondents acted under the authority conferred to them by Congress.

Federal statutes dictate when it is proper to arrest a noncitizen during the removal process. *See Arizona v. United States*, 567 U.S. 387, 407 (2012). The Immigration and Nationality Act provides two mechanisms for arresting a noncitizen prior to a final

removal order. One is to arrest with a warrant under the authority in 8 U.S.C. § 1226(a); the other is to arrest without a warrant under more limited authority in 8 U.S.C. § 1357. *See id.* at 408.

Petitioner argues his arrest was unlawful and contests the validity of the I-200 warrant produced by Respondents. He argues that the biometric confirmation that the warrant relies upon could not have been conducted until after his arrest. He also contends that, without a valid warrant, Respondents had to comply with the requirements for conducting a warrantless arrest under 8 U.S.C. § 1357(a)(2), which were not satisfied here. Petitioner's arrest was unlawful on both fronts.

**1. Warrant-based arrest**

A valid Form I-200 authorizes the arrest of a noncitizen "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). The timing matters because an NTA initiates the removal proceeding for which the Form I-200 authorizes arrest. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (recognizing that an NTA "serves as the basis for commencing a grave legal proceeding"). Therefore, a lawful warrant-based arrest stems from the authority Congress granted in § 1226 (allowing arrest on a warrant) and Respondents' own rule in § 236.1 (authorizing arrest on an I-200 at or after issuance of a Notice to Appear).

Here, the record shows that Petitioner's NTA had been issued years before the time that he was arrested on the I-200 warrant. Accordingly, there is no defect with respect to the timing of arrest under 8 C.F.R. § 236.1(b).

The defect concerns the ground the issuing officer certified on the warrant. The issuing officer states that before signing the I-200, he reviewed two immigration records bearing Petitioner's name, date of birth, and photograph, as well as the Immigration Judge's January 2025 decision. (Doc. No. 11 ¶¶ 4–6.) Those records gave him substantial reason to believe that Petitioner was in removal proceedings. The warrant provided a separate box for that ground, but that box was not checked. The only ground certified required both a records check and biometric confirmation of Petitioner's identity. (Doc. No. 7-4.)

When directed to identify the comparison and who performed it (Doc. No. 9), Respondents submitted the issuing officer's own account. He described a match by name and date of birth. He identified no comparison of fingerprints, photographs, or any other physical characteristic before he signed. *See Jaminton R.B. v. Mullin*, Civ. No. 26-3091 (ECT/JFD), 2026 WL 2350324, at *2 (D. Minn. Aug. 13, 2026) (discussing which actions constitute biometric confirmation of identity). The visual identification he described occurred four days later, when officers arrested Petitioner. (Doc. No. 11 ¶¶ 3–7.) On this evidence, Petitioner has shown by a preponderance that the biometric confirmation certified on the warrant did not occur.

That defect matters because Respondents rely on this warrant as their authority to make the arrest. Sustaining it on the pendency of removal proceedings would require substituting a ground the issuing officer left unselected for the only ground he certified. On this record, the May 22 warrant did not authorize the May 26 arrest. Therefore, Petitioner was arrested without a valid warrant in violation of § 1226(a).

**2. Warrantless arrest**

Respondents do not engage with Petitioner's warrantless arrest arguments. But even so, the record shows that the statutory requirements for a warrantless arrest were not satisfied. A warrantless arrest may occur only when an officer has reason to believe that a noncitizen is present in violation of immigration law and likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2).

The phrase "reason to believe" has been interpreted to mean constitutionally required probable cause. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). And "likely to escape" means likely to disappear before officers can obtain a warrant or likely to evade detention altogether, not just whether the noncitizen would remain at the scene of the encounter. *See Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (stating the phrase means likely to "disappear before a warrant could be obtained"); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016) (construing the phrase as meaning "likely to evade detention by immigration officers"); *see also A.P.P. v. Blanche*, Civ. No. 26-3125 (LMP/LIB), 2026 WL 2017765, at *3 (D. Minn. July 13, 2026) (collecting cases that construe the meaning of "likely to escape").

The question under "likely to escape" is whether immigration officers would have trouble finding the noncitizen again once they obtain a warrant. *See United States v. Bautisa-Ramos*, No. 18-cr-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct 15, 2018), *R&R adopted*, 2018 WL 5723948 (N.D. Iowa Nov. 1, 2018). The analysis therefore considers whether the noncitizen could be found later at another clearly identifiable location, like their home or place of employment. *See, e.g.*, *Escobar Molina*

*v. U.S. Dep't of Homeland Sec.*, Civ. No. 25-3417 (BAH), 2026 WL 1256234, at *11 (D.D.C. May 7, 2026). ICE itself has given the "likely to escape" phrase this meaning. *See Hussen v. Noem*, No. 26-cv-324 (ECT/ECW), Doc. No. 85-1 (D. Minn. Filed Jan. 30, 2026) (attaching a January 2026 memorandum from former ICE Acting Director Todd Lyons stating that "likely to escape" means "unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained").

As stated above, the review of Petitioner's immigration records provided reason for officers to believe he lacked lawful status. But the circumstances here do not show a likelihood of escape. Four days in advance of the arrest, ICE knew where and when Petitioner would appear. They also knew his address because it was listed on the Wisconsin case docket. Petitioner had appeared for his final pretrial hearing two weeks earlier and was arriving for trial when officers arrested him. Respondents gave no reason to believe he could not be located at a clearly identifiable location—like his address or the Wisconsin courthouse—before they could obtain a valid warrant. The Wisconsin court issued a bench warrant only after ICE prevented Petitioner's appearance, so that filing does not weigh in favor of flight risk here.

On these facts, § 1357(a)(2) did not supply Respondents with alternative authority for Petitioner's arrest.

**B. Remedy**

The remaining question is the consequence of the unlawful arrest. Respondents contend that Petitioner is now properly subject to mandatory detention under

§ 1225(b)(2)(A). But as explained below, § 1225 supplies no arrest authority and cannot sustain the same uninterrupted custody that began through an unauthorized arrest.

### 1. Release preserves the statutory text and structure

Under *Avila v. Bondi*, 170 F.4th 1128, 1136–38 (8th Cir. 2026), § 1225(b)(2)(A) can require detention of an applicant for admission encountered in the interior. The statute directs detention for a removal proceeding once an examining officer makes the determination it prescribes. *Avila* did not decide whether § 1225(b)(2)(A) independently sustains custody when the only ground certified on the arrest warrant was materially inaccurate.

The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists. *See, e.g.*, *Singh v. Sommer*, No. 7:26-cv-5013, 2026 WL 2042296, at *2–3 (D. Neb. July 15, 2026); *Cabrera v. Hidalgo*, No. 1:26-cv-1101 (LMB/LRV), 2026 WL 2002085, at *3 (E.D. Va. June 18, 2026); *A.P.A. v. Arteta*, No. 26-CV-3334 (AS), 2026 WL 1587452, at *3–4 (S.D.N.Y. June 3, 2026). Others have ordered release after finding that the Government lacked statutory authority for the arrest. *See, e.g.*, *Juan J.M.E. v. Easterwood*, Civ. No. 26-2270 (KMM/EMB), 2026 WL 1746672, at *2–3 (D. Minn. June 8, 2026), *R&R adopted*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Alberto Perdomo Rivera v. Mullin*, No. 5:26-cv-04197-KES, 2026 WL 2276935, at *3 & n.1 (C.D. Cal. Aug. 6, 2026).

Reading § 1225 to sustain Petitioner's current detention despite an unauthorized arrest would substantially diminish the legal and regulatory limits placed on immigration

arrests. *See, e.g.*, *Carlos F.P.P. v. Blanche*, Civ. No. 26-3123 (JWB/JFD), 2026 WL 2824801, at *5–6 (D. Minn. Sept. 21, 2026) (explaining how statutory construction preserves distinct arrest and detention functions). A warrant must be based on probable cause and generally permits an arrest only once an NTA is issued. A warrantless arrest is allowed only when specified conditions are met. Respondents' reading would allow ICE to rely on § 1225 to continue holding Petitioner even though it failed to satisfy either statutory ground for his interior arrest.

Accordingly, § 1225(b)(2)(A) does not independently sustain Petitioner's present custody that began with an unauthorized arrest.

### 2. ***Bilokumsky*** **and later proceedings**

*United States ex rel. Bilokumsky v. Tod* states that if "sufficient ground" for a prisoner's detention is shown, the prisoner "is not to be discharged for defects in the original arrest or commitment." 263 U.S. 149, 158 (1923) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

That principle cannot be given short shrift because of the case's age. The Supreme Court later cited the same page of *Bilokumsky* in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984), when explaining that an unlawful arrest does not itself invalidate a subsequent deportation proceeding.

The *Bilokumsky* principle does not resolve this case. *Bilokumsky* establishes that an unlawful original arrest does not invariably require habeas release when sufficient lawful grounds for detention subsequently exist. The unresolved question here is whether § 1225(b)(2)(A) supplies that "sufficient ground" where Petitioner remains in the same

custody acquired through an interior warrant-based arrest for which § 1226 specifically supplied—and limited—the Government's authority.

Immigration officers examined Petitioner in 2015. That encounter record identifies expedited removal with credible fear. Petitioner later received an NTA, appeared in ordinary removal proceedings, and pursued his asylum claim after his release. (Petition ¶¶ 11–12; Doc. Nos. 7-1, 7-2, 11-2 at 2–3.) Even assuming § 1225(b)(2)(A) applies as Respondents contend, the 2015 examination preceded Petitioner's release. Respondents identify the May 22 warrant as the authority they exercised to take him back into custody. They point to no termination of parole or other independent custody decision that would account for his return to detention. (Doc. No. 6 at 6–15; Doc. No. 11 ¶¶ 4–7.) On this record, the statutory detention directive supplies no independent ground for continuing the custody that began with the May arrest.

Judge Tunheim directed Respondents to provide an individualized bond hearing under § 1226(a). At the June 8 hearing, the Immigration Judge found that Petitioner posed a danger and a flight risk and denied his request for a change in custody status. (Petition ¶¶ 37–38; Doc. No. 1-4 at 4.) Based on those findings, the Immigration Judge decided whether Petitioner should be released on bond while in ICE custody. The decision presupposed authority to hold him and did not resolve his challenge to that authority. The bond denial therefore supplies no independent lawful ground for Petitioner's present detention.

The appropriate habeas remedy is to release Petitioner from the present custody. *See* 28 U.S.C. §§ 2241(c)(3), 2243; *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That

relief is narrow. His removal proceeding may continue after release. *See Lopez-Mendoza*, 468 U.S. at 1039–40. The writ extends only to the custody challenged here. Respondents are not precluded from making a later arrest under lawful authority and in compliance with the procedures governing that arrest. *See* 28 U.S.C. §§ 2241(c)(3), 2243.

However, an additional restriction on re-detaining Petitioner is warranted here. Respondents maintain that § 1225(b)(2)(A) requires Petitioner's detention and that an Immigration Judge lacks authority to grant him bond. That position matters here because ICE has re-arrested successful habeas petitioners in this District as they were being released, in one instance within a minute. *Juan Y.P.M. v. Mullin*, Civ. No. 26-4662 (JRT/LIB), 2026 WL 3521183, at *3 & n.4 (D. Minn. Nov. 16, 2026). If that happens here, Petitioner will lose his liberty again before counsel can test whether ICE has corrected the defect in the initial arrest. A later ruling cannot restore that time.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and Respondents are ordered to immediately release Petitioner. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Jose E.A.C.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents must arrange for Petitioner's immediate release from custody. Respondents must provide Petitioner's counsel at least one-hour advance notice of the

release time and location.

3. When Petitioner is released:

a. **Release and Return of Property.** When Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents shall release Petitioner without conditions. They may not require him to sign a release instrument or impose or reimpose conditions of supervision in carrying out this Order.

4. **Notice.** Within **48 hours** of entry of this Order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

5. Detention was deemed insufficient because Petitioner's arrest occurred without a valid arrest warrant and because the statutory requirements for a warrantless arrest were not met. Before re-detaining Petitioner in the pending removal proceedings, Respondents must first obtain leave in this case. The motion must be served on

Petitioner's counsel, identify the authority and facts supporting the proposed arrest, and explain how the proposed arrest complies with the requirements governing it. Respondents may request expedited consideration.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 24, 2026
Time: 5:10 p.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge